Mr. Randy Miller Executive Director Department of Revenue The Carlton Building Tallahassee, Florida 32301
Dear Mr. Miller:
This is in response to your request for an opinion on the following question:
 WHAT IS THE PROPER DISPOSITION OF EXCESS FUNDS IN THE VOTED GAS TAX TRUST FUND RESULTING FROM TAXES REMITTED BY LICENSED DISTRIBUTORS OF MOTOR FUEL OR LICENSED DEALERS OF SPECIAL FUEL FOR COUNTIES WHICH HAVE NO VOTED GAS TAX?
In your letter, you note that the Auditor General reported an undistributed accumulation of approximately $46,000.00 in the Voted Gas Tax Trust Fund as of June 30, 1983. This amount represents taxes remitted in error to the Department of Revenue for counties which have not imposed a voted gas tax pursuant to s.336.021, F.S. You state that "some of the larger amounts of taxes in error were refunded to the licensed distributor[s] or dealers who remitted them or a credit memo issued, but many of the smaller amounts (as low as 41 cents) have not been processed and no refund application has been filed on them."
Pursuant to s. 336.021(1), F.S., as amended by s. 122, Ch. 85-342, Laws of Florida (effective January 1, 1986), counties, in the discretion of their governing bodies and subject to a referendum, may impose, in addition to all other taxes required or allowed by law, a 1-cent voted gas tax upon every gallon of motor fuel and special fuel sold in the counties and taxed under the provisions of Ch. 206, F.S. The tax revenue is "for the purpose of paying the costs and expenses of establishing, operating, and maintaining a transportation system and related facilities and the cost of acquisition, construction, reconstruction, and maintenance of roads and streets." As you have noted, the tax is presently levied and paid upon the first sale or transfer of title, or use, within this state whether by a distributor or dealer. See, s. 336.021(1), F.S. 1983, stating that the tax shall be collected in the same manner as all other gas taxes pursuant to Ch. 206. And see,206.41, F.S. 1983, and 206.87, F.S. (1984 Supp.), as amended by ss. 51 and 125, Ch. 85-342, Laws of Florida. As of January 1, 1986, the tax will be collected and remitted by any person engaged in using or selling at retail motor or special fuel within a county in which the tax is authorized. See, s. 122, Ch. 85-342, Laws of Florida, amending s. 336.021, effective January 1, 1986, pursuant to s. 221, Ch. 85-342. You state that the department transfers these funds to the Voted Gas Tax Trust Fund which was created for distribution to the counties which have passed the voted gas tax. See, s. 336.021(2), F.S., which creates the Voted Gas Tax Trust Fund for distribution of funds to the county in which the tax was collected.
Pursuant to s. 336.021(2), F.S., the provisions of Ch. 206, F.S., including, but not limited to, the timely filing of reports and tax collected, suits for collection of unpaid taxes, department warrants for collection of unpaid taxes, penalties, interest, retention of records, inspection of records, liens on property, foreclosure, and enforcement and collection also apply to the tax authorized in s. 336.021. Section 336.021(1), however, expressly states that the provisions for refund set forth in ss. 206.625
(1984 Supp.) (return of tax to municipalities, counties, and school districts) and 206.64 (refunds on fuel used for agricultural or commercial fishing purposes) are not applicable to such tax levied by any county.
Section 206.13, F.S., directs that when any taxes, interest or penalties imposed by Parts I or II of Ch. 206 have been erroneously paid or illegally collected, the Department of Revenue may permit the distributor within 1 year to take credit against a subsequent tax report for the amount of the erroneous or illegal overpayment, or the distributor may apply for refund as provided by s. 215.26, F.S. [Note that s. 206.13 has been amended by s. 93, Ch. 85-342, Laws of Florida, effective January 1, 1986; the amendment deletes reference to the "distributor" and inserts the terms "refiner, importer or wholesaler."] And see, s. 336.021(2), supra, stating that the provisions of Ch. 206 are applicable to the tax authorized in s. 336.021. Section 215.26, which is the exclusive procedure and remedy for refund claims between individual funds and accounts in the State Treasury (see, s.215.26[4], empowers the Comptroller to make refunds of any monies paid into the State Treasury which constitute a) overpayments of any tax, license, or account due; b) payments where no tax, license, or account is due; and c) payments made into the State Treasury in error. Section 215.26(1). Application for such refunds must be filed within 3 years after the right to the refund shall have accrued or the right shall be barred. Section 215.26(2). Moreover, no refund of less than one dollar shall be made except upon application. Section 215.26(3). Cf., AGO 78-149.
Thus, if more than one year has passed from the time voted gas taxes were erroneously paid, the Department of Revenue may not issue a credit against subsequent taxes. Section 206.13, F.S. Moreover, if more than three years have passed after the right to a refund accrued pursuant to s. 215.26, that right will be barred. See, State ex rel. Victor Chemical Works v. Gay, 74 So.2d 560, 562
(Fla. 1954), wherein the Florida Supreme Court noted that if the provisions of s. 215.26 were not complied with, "the statute becomes an effective bar in law and in equity." And see, Stewart Arms Apartments, LTD. v. State Department of Revenue,362 So.2d 1003 (4 D.C.A.Fla. 1978) (general rule seems to be that when claim for refund of taxes must be made within a stated time after the refund accrues, the time period commences when tax is paid). See also, AGO's 64-22 and 69-60 referring to 84 C.J.S. Taxation s. 631, p. 1263 and noting "the general rule `that refunds of taxes must be made under and pursuant to statutes, . . . and then in the manner provided by the statute.'" Cf., Reynolds Fasteners, Inc. v. Wright, 197 So.2d 295 (Fla. 1967). In the absence of an authoritative statute, taxes which were voluntarily albeit mistakenly paid cannot be voluntarily refunded. State ex rel. Victor Chemical Works v. Gay, supra. Therefore, such taxes may not be returned to those who erroneously remitted the payments absent a claim for refund in accordance with statutory procedures and time constraints, nor may such funds be distributed to those counties which have imposed the voted gas tax since s. 336.021
only authorizes the distribution of the tax to the county where collected.
In AGO 81-66, this office discussed the disposition of excess funds in the Marco Island toll facility investment account which was held by the State Board of Administration. In that case, the Department of Transportation had collected tolls without authorization after certain revenue bonds and other obligations related to the construction of the Marco Island Bridge and Causeway in Collier County had been repaid. The opinion observed that it would be impossible to refund the money to those who paid the tolls in using the project, and that no contractual or statutory direction existed for the disposition of the excess funds in the account. The opinion concluded that the money must remain in the investment account or sinking fund subject to appropriation by the Legislature in accordance with the fiscal laws governing the budgeting and appropriation of state funds.
As you have noted, there is no practical way to trace and verify those who erroneously paid the voted gas tax. Moreover, I am not aware of any statute which would direct the disposition of excess funds in the Voted Gas Tax Trust Fund except as discussed herein, nor has any such provision been brought to the attention of this office. Accordingly, the conclusion in AGO 81-66, supra, to the effect that such monies must remain in the fund subject to legislative appropriation would appear to be equally applicable to the instant inquiry. See, s. 1(c), Art. VII, State Const. See also, AGO's 73-313 (cigarette tax revenues which are credited or transferred to the Municipal Financial Assistance Trust Fund, but which have accumulated for lack of a qualifying municipality, must remain in the trust fund, subject to future appropriation disposition, or transfer by the Legislature) and 79-108 (the Department of Insurance or the Insurance Commissioner and Treasurer is not authorized by law to transfer undistributed funds accumulated in the Insurance Commissioner's Regulatory Trust Fund to the State General Revenue Fund to make any disposition of such funds other than as prescribed in Chs. 175 and 185, F.S. Any other disposition of such funds must await specific legislative direction). Cf., State v. Cone, 177 So. 854 (Fla. 1937), and Petition of Florida Bar, 61 So.2d 646 (Fla. 1952).
In sum, it is my opinion that in the absence of statutory direction for the disposition of excess funds in the Voted Gas Tax Trust Fund resulting from taxes erroneously remitted by licensed distributors of motor fuel or licensed dealers of special fuel for counties which have no voted gas tax, such monies should continue to remain in the Fund subject to appropriation by the Legislature in accordance with the fiscal laws governing the budgeting and appropriation of state funds.
Sincerely,
Jim Smith Attorney General
Prepared by:
John Rosner Assistant Attorney General